UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:08-35-KKC

BOBBI JEAN CROSS,                                                    PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                    DEFENDANT

* * * * * * * *

This matter is before the Court on the Cross Motions for Summary Judgment filed by the Plaintiff, Bobbi Jean Cross [R. 10] and the Defendant, Commissioner Astrue [R.11].  For the reasons stated below, the Plaintiff's Motion for Summary Judgment is ordered **DENIED** and the Defendant's Motion for Summary Judgment is ordered **GRANTED**.

I.      **Factual and Procedural Background**

The Plaintiff, Bobbi Jean Cross, filed applications for a period of disability, disability insurance benefits, and supplemental security income on March 28, 2006.  She alleges that she became disabled on March 3, 2006 due to the following impairments: asthma, cellulitis, back pain, knee and hip pain, scoliosis, degenerative disc disease, spina bifida, swelling, high blood pressure, migraines, arthritis, inflammation of the knees, and psychological problems.  Transcript at 92 [hereinafter "Tr."]; Plaintiff's Motion for Summary Judgment at 2 [hereinafter "Plaintiff's Motion"].  Although they are not mentioned in her disability application, Plaintiff's psychological problems appear to be depression, anxiety, stress, and anger management.  Plaintiff's Motion at 2.  Plaintiff had also sought to obtain Social Security disability benefits on

1

several prior occasions.  She filed her first disability application in November 1982; this application was denied initially and was not pursued further.  A second application filed on December 12, 1996 was dismissed by hearing decision on September 21, 1998.  A third disability claim was dismissed for abandonment on March 15, 2001.  Finally, Plaintiff's fourth claim was initially denied on June 18, 2003; Plaintiff did not further pursue this claim.

Plaintiff was thirty-five years old at the time her hearing decision was issued, she has a high school-level education, and she has past work experience as a telemarketer.  Plaintiff's regular activities consist of household chores, such as dusting, vacuuming, mopping, doing laundry, cooking, and washing dishes; taking care of her personal grooming and other self-care needs; mowing and weed-eating the lawn; driving; shopping; reading; watching television; using her computer; attending church and her son's ball games; and taking her son to the park.  ALJ's Opinion at 11.  Plaintiff takes several medications for her alleged impairments, including Proventil, Loratab, and Prevacid.  Tr. at 140.

Plaintiff does not challenge the ALJ's findings regarding her physical impairments; she instead only challenges the determinations about her mental impairments.  As such, the Court will only document Plaintiff's medical records and information with respect to her alleged mental impairments.  Plaintiff has received treatment at Cumberland River Comprehensive Care [hereinafter "Comp Care"] since May 2003.  Plaintiff was referred to Comp Care by Judge Ronald Johnson for a psychological assessment to help determine whether she should permanently lose her child custody rights.  Tr. at 143.

During the assessment at Comp Care, Plaintiff was examined by clinical psychologist Barbara Berk.  Berk reported that Plaintiff was cooperative throughout the evaluation and

2

appeared to put forth her best effort during the testing process.  Tr. at 143.  Plaintiff exhibited

perfectionist-type behavior in her testing, taking a great deal of time to complete the various tasks

assigned her and changing her responses to the questions asked her.  Tr. at 143.  Berk stated that

Plaintiff did not seem able to accept any responsibility for her failure to care for her children.

Plaintiff manifested attitude and anger problems, as she had screamed and cursed in court during

her custody hearing and verbally abused her children.  Tr. at 144.  Based on the testing

performed, Berk opined that Plaintiff "is a very emotionally disturbed woman."  Tr. at 146.  Berk

said that Plaintiff has a great deal of severe emotional disturbance and maladjustment and that

she is very immature and self-centered.  Tr. at 145.  Berk stated that Plaintiff has problems with

depression, anxiety, and uncontrollable anger, the latter of which is of a serious degree and

intensity.  Tr. at 145.  Berk also stated that Plaintiff has the ability and tendency to be very

aggressive and even assaultive.  Tr. at 145.  Berk concluded that Plaintiff has a great deal of

deep-seated psychopathology, that she has an emotional and sexual maladjustment, and that she

is capable of harming others or even killing herself.  Tr. at 146.  Accordingly, Berk

recommended that Plaintiff not be allowed custody of her children.  Tr. at 146.

Plaintiff visited the Harlan Medical Center several times between July 2004 and March

2005 for various complaints of abdominal pain, coughing, and headaches.  On January 31, 2005,

Dr. Mousab Almusaddy noted Plaintiff's admission that she had not been taking the medication

prescribed her for the previous six weeks.  Tr. at 155.  On March 21, 2005, Plaintiff asked Dr.

Ziad Sara to provide her with two medical statements to show her employer.  Tr. at 151.  Plaintiff

requested one statement saying that she is on HCTZ, which causes frequent urination and

prevents her from sitting during work, and she requested a second statement saying that she

3

cannot sit for a long time in a chair due to back pain.  After Dr. Sara determined that there was no

clinical evidence to support these statements, and after Plaintiff declined to undergo MRI testing

to obtain such evidence, Dr. Sara refused to issue Plaintiff these statements.  Plaintiff expressed

her unhappiness with this refusal, and in front of Dr. Sara's nurses she threatened to contact her

attorney "to deal with all of the doctors that have not been satisfying her needs."  Tr. at 151.  Dr.

Sara discharged Plaintiff from her medical care.  Tr. at 151.

Plaintiff received psychological treatment at Comp Care from January 11, 2005 to July

13, 2005.  On her initial evaluation, Plaintiff was considered cooperative and attentive, with a

neat and appropriate appearance.  She was oriented times three, had normal psychomotor

activity, and displayed no evidence of psychotic symptoms.  She was not deemed suicidal, she

appeared to understand the consequences of her behavior, and she was considered stable.  Tr. at

186-87.  However, Plaintiff was reported to be anxious and did not seem to understand her

problems.  Tr. at 186.  Plaintiff was diagnosed with mood disorder, due to her medical condition,

and intermittent explosive disorder and was assessed a global assessment of functioning

[hereinafter "GAF"] of fifty-eight.  Tr. at 189.  Later in Plaintiff's term of treatment at Comp

Care, Plaintiff was reportedly making some progress, had become actively involved in her

treatment, and remained free of suicidal ideation.  Tr. at 179-82.  Comp Care never changed her

treatment approach throughout this time, though the scheduling of her therapy meetings was

decreased from weekly to monthly.  Tr. at 179-91.

Appalachian Regional Healthcare Emergency Department Records from around this same

time did not reveal any psychological abnormalities.  Tr. at 200-28.  Outpatient Hospital Records

from Appalachian Regional Healthcare from April 2005 to March 2006 consistently indicated

4

that Plaintiff was alert, oriented, active, and not appearing in any acute distress.  Tr. at 269, 273,

275, 279, 287-88, 297-98.  No psychological abnormalities were ever reported during this time.

Tr. at 229-320.  On February 14, 2006, Dr. Richard Stoltzfus stated that Plaintiff did not appear

in as acute of pain as she self-rated.  Tr. at 288.  A June 14, 2006 consultative examination report

from Dr. Barry Burchett stated that Plaintiff's appearance, mood, orientation, and thinking all

seemed appropriate.  Tr. at 324.

Psychologist Jeanne Bennett performed a consultative examination of Plaintiff on June

24, 2006.  Bennett reported that Plaintiff's complained-of psychological impairments were severe

depression and anger-control problems.  Tr. at 335.  Plaintiff mentioned her previous outpatient

treatment at Comp Care, but denied having had any inpatient psychiatric treatment.  Tr. at 336.

Bennett stated that during Plaintiff's examination, she appeared anxious and angry at times about

her situation, although she was cooperative and her attention and concentration were intact.  Tr.

at 337-38.  Plaintiff's thoughts were organized in a logical and goal-directed manner with

appropriate content, she exhibited no indications of delusional thinking or paranoid ideation, and

Bennett noted no symptoms of a formal thought disorder.  Tr. at 338.  Plaintiff displayed fair

judgment and appeared capable of making decisions for herself independently, though she

demonstrated a limited capacity for insight and her global intellectual functioning was deemed to

be in the low-average range.  Tr. at 338-39.  Plaintiff explained that she dealt with stress by

crying and becoming very angry, often reacting by "exploding."  Tr. at 339.  Plaintiff rated her

mood as ten on a scale of one to ten, with ten being the worst mood, although Bennett rated her

mood as a seven based on clinical presentation.  Tr. at 338.

Bennett diagnosed Plaintiff with major depressive disorder, recurrent, moderate and

5

borderline personality traits.  Bennett assessed Plaintiff's GAF as forty-five.  Tr. at 339.  Bennett opined that Plaintiff's capacity to understand, remember, and carry out instructions toward the performance of simple, repetitive tasks is not affected by her impairments, and that her ability to sustain attention and concentration towards the performance of such tasks is affected by her impairments with only slight limitations.  Tr. at 339.  Bennett also opined that Plaintiff's ability to tolerate the stress and pressure of day-to-day employment, as well as her capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting, is affected by her impairments with moderate to marked limitations.  Tr. at 339-40.  Bennett concluded that Plaintiff's prognosis for improvement is fair with mental health intervention but poor in the absence of treatment.  Tr. at 340.

State agency reviewing physician Dr. Laura Cutler completed a Psychiatric Review Technique form about Plaintiff's alleged mental impairments on July 12, 2006.  Cutler opined that Plaintiff has major depressive disorder, but no other medically determinable mental impairment, and stated that Plaintiff's medical evidence does not establish the "C" Criteria of the Social Security Listings.  Tr. at 341-50, 352.  Cutler further opined that Plaintiff's mental impairment creates only mild functional limitations in her activities of daily living and in maintaining her concentration, persistence, or pace, and creates moderate limitations in maintaining her social functioning.  Tr. at 351.

In Cutler's Mental Residual Functional Capacity [hereinafter "RFC"] Assessment, she opined that Plaintiff is moderately limited only in her abilities to interact appropriately with the general public and to respond appropriately to changes in the work setting.  Cutler deemed Plaintiff "not significantly limited" in every other area of functioning.  Tr. at 355-56.  Cutler

6

stated that Plaintiff has a history of mental health treatment, showing mood symptoms, but that she had otherwise normal mental-health status.  Cutler explained that she placed great weight on the portion of Bennett's opinion which stated that Plaintiff has an adequate ability to follow instructions and sustain concentration, persistence, or pace.  However, Cutler also reported that she gave little weight to the remainder of Bennett's opinion since "the degree of severity opined is not fully supported by objective findings."  Tr. at 357.  Cutler concluded that Plaintiff is able to understand and remember simple instructions; sustain attention for extended periods of two-hour segments for simple tasks; tolerate co-workers and supervisors in a task-focused setting; and adapt to changes as needed within the above parameters.  Tr. at 357.  Cutler's Psychiatric Review and Mental RFC Assessment were affirmed in whole by state agency reviewing physician Dr. Lea Perritt.  Tr. at 400-17.

On February 23, 2007, Comp Care records indicate that Plaintiff was diagnosed with adjustment disorder with mixed disturbance of emotions and conduct, as well as risk of dependent personality disorder and borderline personality disorder.  Plaintiff's GAF was assessed at fifty-five.  Tr. at 437.  Comp Care records from April 16, 2007 indicate that Plaintiff was experiencing daily irritability, irregular sleep disturbance, daily crying spells, feelings of anxiety, and worry regarding her children.  Tr. at 435.  Plaintiff's treatment for this consisted of individual monthly therapy sessions focused on anger management and monitoring, socialization and assertiveness skills, and in maintaining appropriate boundaries.  Tr. at 435-36.  A July 24, 2007 evaluation from Dr. S. Raza reported Plaintiff's sleeping difficulties, crying spells, anger problems, and anxiety.  Plaintiff had an anxious mood, a congruent affect, logical and sequential thought processes, and was oriented to place, person, and situation.  Her thought content denied

delusions, hallucinations, and suicidal or homicidal thoughts.  Tr. at 438.  Dr. Raza diagnosed

Plaintiff with adjustment disorder with mixed features of anxiety, depression, and mixed

disturbance of conduct and emotions, and also with posttraumatic stress disorder.  Plaintiff was

prescribed Vistaril with plans to be started later on antidepressant medications.  Tr. at 438.

Plaintiff's applications for disability insurance benefits and supplemental security income

were denied initially and upon reconsideration.  An administrative hearing was held before ALJ

James P. Alderisio on July 17, 2007.  The ALJ denied Plaintiff's applications by written opinion

on September 18, 2007, and the Social Security Appeals Council later denied review of this

decision.  Plaintiff then brought the instant action before this Court to challenge the ALJ's

decision not to grant Plaintiff disability benefits.

## II.    Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to

uphold the Agency decision, "absent a determination that the Commissioner has failed to apply

the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal

quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d

284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if

there is substantial evidence in the record that would have supported an opposite conclusion, so

long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th

8

Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

## III.  **Analysis**

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a Social Security disability claimant qualifies as legally disabled, and is thus entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1527(e)(1).  To make this determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520, 404.920).  An impairment or combination of impairments is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Moreover, "an impairment can be considered not severe only if it is a

slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  While the claimant bears the burden of proof for the first four steps of this process, if she does so, the burden shifts to the Commissioner for the final step.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

In addition, a two-part analysis is used to evaluate the credibility of a claimant's allegations of disabling pain.  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. § 929(a).  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities.  *Id.*  Relevant factors that may be considered in this evaluation include: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment undertaken to relieve the symptoms; other measures undertaken to relieve the symptoms; and any other factors bearing on the ability of the claimant to perform basic work activities.  *Id.*; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

In the instant case, the ALJ performed the required analysis.  The ALJ first found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of March 3, 2006.  ALJ's Opinion at 3.  Next, the ALJ found that Plaintiff has the following severe medically determinable impairments: disorders of the back, discogenic and degenerative; asthma; hypertension; obesity; depressive disorder; and borderline personality traits.  *Id.*  At step three of

10

the five-step analysis, however, the ALJ determined that none of these impairments met or medically equaled one of the impairments from the Social Security listings.  *Id.* at 7.  The ALJ then found that Plaintiff has the RFC to perform sedentary work, but subject to the following limitations: she cannot climb ladders, ropes, or scaffolds; she can do no more than occasional kneeling, bending, stooping, and balancing; she cannot be exposed to hazardous machinery or dust, fumes, smoke, chemicals, or noxious gases; and she requires a flat surface for walking.  *Id.* at 8.  In addition, the ALJ found that Plaintiff has no useful ability to interact with the general public but has a satisfactory ability to interact with coworkers and supervisors, and that she is able to maintain attention and concentration and to understand and carry out simple one-to-two step instructions.  *Id.*

At this point, the ALJ also followed the two-part process for evaluating complaints of disabling pain.  The ALJ found that, although Plaintiff's medically determinable impairments can reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible.  *Id.* at 10.  Proceeding to step four of the disability analysis, the ALJ next found that Plaintiff cannot engage in any of her past relevant work.  *Id.* at 12.  Finally, the ALJ determined, with the aid of a vocational expert, that jobs exist in significant numbers in the national economy that Plaintiff is able to perform when considering her age, education, work experience, and RFC.  *Id.*  The ALJ then concluded that Plaintiff has not been under a disability at any time since her alleged onset date, and therefore denied her applications for disability insurance benefits and supplemental security income.  *Id.* at 12-13.

Plaintiff submits that the ALJ incorrectly decided her case.  Plaintiff claims that, contrary

11

to the ALJ's conclusion, she is in fact disabled within the meaning of the Social Security Act and is therefore entitled to disability insurance benefits and supplemental security income.  Plaintiff argues that the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence.  Plaintiff's Motion at 2-6.  Specifically, Plaintiff argues that the ALJ failed to give appropriate consideration to the evidence regarding Plaintiff's alleged mental impairments.  *Id.* at 2.  According to Plaintiff, the totality of the evidence shows that Plaintiff's alleged mental impairments are of such severity as to produce greater work-related limitations than the ALJ found.  Moreover, the ALJ improperly adopted the state-agency reviewing physicians' opinions of Plaintiff's limitations and incorrectly dismissed the credibility of Plaintiff's allegations.  *Id.* at 3.  As such, the RFC submitted to the vocational expert did not accurately reflect the Plaintiff's work-related limitations and the ALJ thus wrongly determined that Plaintiff is still able to perform work, precluding her disability claim.  *Id.* at 4.  The Court cannot agree with Plaintiff.

As an opening matter, the Court notes that Plaintiff has also pursued disability claims on four prior occasions: in 1982, 1996, 2001, and 2003.  Apparently, a hearing decision on the merits was obtained for only one of these claims, that from 1996, and that hearing decision is not available for the Court's review.  All of these prior disability claims were denied.  Under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), absent evidence of improvement or deterioration in a Social Security claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  The ALJ recognized as much.  He noted that the rule of *Drummond* cannot be strictly applied in the instant case since the written opinion from the prior hearing decision is not available for review.  ALJ's Opinion at 8.  However, the ALJ then explained that,

12

inasmuch as the current residual functional capacity is for sedentary work, it is apparent that the claimant's work-related abilities have either remained static or can be reasonably be expected to have deteriorated somewhat although not to a disabling level when compared to the record nine years earlier.

*Id.*

The essential issue for this Court, then, is whether substantial evidence supports the ALJ's determination that Plaintiff retains the RFC to perform sedentary work. If it does, then the ALJ acted correctly in accordance with *Drummond* by denying Plaintiff's disability claim; if not, then the ALJ's decision must be reversed. Upon review of the administrative record, the Court finds that substantial evidence supports the RFC determination, and accordingly supports the ALJ's conclusion that Plaintiff is not entitled to Social Security disability benefits.

During Plaintiff's psychological examination by Barbara Berk, Berk initially described Plaintiff as cooperative throughout the meeting and noted that Plaintiff appeared to put forward her best efforts. Tr. at 143. This indicates to the Court that Plaintiff is able to keep her psychological impairments under control when necessary. These observations also tend to contradict and undermine Beck's statement that Plaintiff has uncontrollable anger of a serious degree and intensity. Tr. at 145. Plaintiff frequently changed her responses to the examination questions Berk presented Plaintiff with, suggesting a degree of falsity in Plaintiff's allegations of disabling mental symptoms. Tr. at 143. Beck concluded by opining that Plaintiff has depression, anxiety, and serious uncontrollable anger. Tr. at 145. However, as previously mentioned, Beck's assessment of Plaintiff's anger issue is undermined by her earlier description of Plaintiff's demeanor. Moreover, as Defendant points out, Beck admitted that her evaluation was not exhaustive and only contained the essential information necessary for the purpose of determining

Plaintiff's parental rights. Tr. at 146. The ALJ was not required to place any weight on this evaluation if he found it unpersuasive in light of the other record medical evidence. In addition, since Beck does not constitute a treating source, the ALJ was not even required to explain his reasons for not deferring to her conclusions about Plaintiff's impairments. *See* 20 C.F.R. § 404.1502; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

On January 31, 2005, Plaintiff admitted to Dr. Mousab Almusaddy that she had not been taking her medication as she had been directed to do. Plaintiff's unwillingness to follow doctors' orders for her treatment clearly diminishes her credibility regarding the alleged severity of her symptoms. Plaintiff's encounter with Dr. Sara further undermines her credibility in describing her symptoms' severity and intensity. Plaintiff specifically requested that Dr. Sara provide her employer with statements saying that Plaintiff requires frequent bathroom breaks and is unable to sit down for long periods of time. Dr. Sara refused to do this because there was no clinical evidence to support this. Tr. at 151. Upon hearing this, Plaintiff became angry and threatened to contact her attorney "to deal with all of the doctors that have not been satisfying her needs." Tr. at 151.

This event casts a great deal of doubt on the credibility of Plaintiff's disability allegations and further supports the ALJ's conclusions. The episode makes it appear as though Plaintiff is trying to find a doctor who will assess her medical condition as much worse than it is in actuality, rather than providing an honest assessment that may or may not confirm Plaintiff's allegations. Although Dr. Sara was treating Plaintiff's physical impairments and not the alleged mental impairments at issue here, the doubt that this event casts on Plaintiff's credibility affects the very heart of Plaintiff's claims—that Plaintiff suffers from severe, disabling medical symptoms. The

14

Court sees no reason that this should be limited to Plaintiff's physical symptoms allegations alone.

Plaintiff's Comp Care psychological treatment records from January to July 2005 also provide strong evidence in support of the ALJ's RFC and disability conclusions.  On initial evaluation, Plaintiff was described as cooperative and attentive, had a neat and appropriate appearance, was oriented times three, had normal psychomotor activity, and displayed no evidence of psychotic symptoms.  Tr. at 186-87.  Moreover, Plaintiff was not deemed suicidal, she was considered stable, and she appeared to understand the consequences of her behavior. Although Plaintiff was diagnosed with mood disorder and explosive disorder, she was assessed a GAF of fifty-eight, reflecting only moderate symptoms or moderate difficulty in social or occupational functioning.    Tr. at 186-87; *see* GLOBAL ASSESSMENT OF FUNCTIONING at 2. Plaintiff's condition clearly improved as her treatment continued, as it was reported that she was making progress, was actively involved in her therapy sessions, and remained free of suicidal ideation.  Further indication of this is the fact that Comp Care never needed to alter her level of treatment, and that the frequency of her therapy sessions were even allowed to decrease from a weekly to a monthly schedule.  Tr. at 179-91.

In addition, records from Appalachian Regional Healthcare Emergency Department did not mention that Plaintiff had any psychological abnormalities.  Tr. at 200-28.  Appalachian Regional Healthcare's outpatient records accordingly described Plaintiff as alert, oriented, active, and not appearing in any acute distress.    Tr. at 269, 273, 275, 279, 287-88, 297-98.  These records also make no mention of any psychological abnormalities.  Tr. at 229-320.  Dr. Stoltzfus reported on February 14, 2006 that Plaintiff did not appear to be in as acute of pain as she self-

rated, casting even further doubt on her credibility regarding the severity of her medical symptoms.  Tr. at 288.  Also, on June 14, 2006, Dr. Burchett reported the results of his consultative examination of Plaintiff.  Despite Plaintiff's allegations of severe, disabling mental impairments, Dr. Burchett stated that Plaintiff's mood, appearance, orientation, and thinking all seemed appropriate.  Tr. at 324.

The consultative examination performed by Bennett on June 24, 2006 provides the strongest evidence in favor of Plaintiff's position.  However, as the ALJ and Defendant have noted, Bennett's psychological assessment is not without its flaws.  Bennett diagnosed Plaintiff with major depressive disorder, recurrent, moderate and borderline personality traits, and assessed her GAF as forty-five, a score indicating serious symptoms or any serious impairment in social or occupational functioning.  Tr. at 339; *see* GLOBAL ASSESSMENT OF FUNCTIONING at 2.  Bennet opined that Plaintiff's ability to tolerate stress and pressure of day-to-day employment, as well as her capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting, is affected by her impairments with moderate to marked limitations.  Tr. at 339-40.  These conclusions undermine the ALJ's findings.  However, Bennett also reported that Plaintiff was cooperative throughout her evaluation, and her concentration and attention were intact.  Tr. at 337-38.  Bennett noted that Plaintiff's thoughts were organized in a logical and goal-directed manner with appropriate content, that she exhibited no signs of delusional thinking or paranoid ideation, and that she had no symptoms of a formal thought disorder.  Tr. at 338.  Plaintiff also displayed fair judgment and appeared capable of making decisions for herself independently.  Tr. at 338-39.  Although Plaintiff self-rated her pain as a ten on a ten-point scale, Bennett instead rated her downward to a seven based on her clinical presentation, suggesting that Plaintiff was

exaggerating her allegedly disabling symptoms.  Tr. at 338.  These observations of Bennett tend to contradict her conclusions about Plaintiff's psychological status and therefore reduce her opinion's evidentiary value.

There is also further evidence that undermines Bennett's conclusions and supports the ALJ's conclusions about Plaintiff.   Contrary to Bennett's lower assessed GAF score of forty-five, Comp Care has assessed a higher GAF score, from fifty-five to fifty-eight, both before and after Bennett's report.  Tr. at 189, 437.  State agency reviewing physician Cutler explained that she had rejected most portions of Bennett's report, including those assessing moderate to marked limitations in Plaintiff's functioning and the forty-five GAF score, because "the degree of severity opined is not supported by objective evidence."  Tr. at 357.  Finally, although Bennett determined that Plaintiff has severe functional limitations due to her mental impairments, Plaintiff's treatment for these impairments has been relatively moderate and conservative in nature.  Plaintiff attended weekly (later reduced to monthly) therapy discussion sessions, she has never undergone inpatient psychiatric treatment, she has never required emergency care, and according to her latest medication list, she does not take any psychotropic drugs.  Tr. at 140.  The ALJ stated that he considered Bennett's opinion and gave it appropriate weight.  ALJ's Opinion at 11.  Since other record evidence contradicts Bennett's assessment, the ALJ could properly have placed little evidentiary weight on this assessment of Plaintiff's disabling symptoms.[1]

The reports of state agency reviewing physicians Cutler and Perritt provide further

---

[1]  The Court also notes that since Bennett only performed a single consultative examination, she cannot constitute a treating source.  *See* 20 C.F.R. § 404.1502.  As such, the ALJ was not required to go into any further detail about his reasoning for rejecting Bennett's conclusions.  *See Smith*, 482 F.3d at 876.

evidence supporting the ALJ's opinion of Plaintiff's disability claims.  Cutler opined that the only medically determinable mental impairment that Plaintiff has is major depressive disorder, that the medical evidence does not establish the "C" Criteria of the Social Security Listings, and that Plaintiff has only mild functional limitations in her activities of daily living and in maintaining her concentration, persistence, or pace, and only moderate limitations in maintaining her social functioning.  Tr. at 341-52.  For Plaintiff's mental RFC, Cutler determined that Plaintiff is only moderately limited in her abilities to interact appropriately with the general public and to respond appropriately to changes in the work setting, and has no significant limitations in any other area of functioning.  Tr. at 355-56.  Cutler stated that Plaintiff's medical history reveals mental-health treatment and mood symptoms, but otherwise normal mental-health status.  Tr. at 357.  Cutler assessed Plaintiff's RFC in the following manner: Plaintiff is able to understand and remember simple instructions; she can sustain attention for extended periods of two-hour segments for simple tasks; she can tolerate co-workers and supervisors in a task-focused setting; and she can adapt to changes as needed.  Tr. at 357.  Perritt's conclusions about Plaintiff's mental impairments were identical to Cutler's.  Tr. at 400-17.

Some of the medical records received subsequent to the administrative hearing support the ALJ's conclusions as well.  On February 23, 2007, Plaintiff's GAF was assessed at fifty-five, again indicating only moderate symptoms or moderate difficulty in social or occupational functioning.  Tr. at 437; *see* GLOBAL ASSESSMENT OF FUNCTIONING at 2.  2007 Comp Care records reveal that Plaintiff's mental-health treatment still consisted of monthly therapy sessions with no inpatient treatment or hospitalization.  Tr. at 435-36.  Admittedly, Dr. Raza diagnosed Plaintiff with adjustment disorder with mixed feelings of anxiety, depression, and mixed

18

disturbance of conduct and emotions, as well as post-traumatic stress disorder.  However, Dr. Raza also noted that Plaintiff had a congruent affect; exhibited logical and sequential thought processes; was oriented to place, person, and situation; and had a thought content that denied delusions, hallucinations, and suicidal or homicidal thoughts.  Tr. at 438.  Moreover, as the ALJ noted, no treating source has opined that Plaintiff is unable to work due to her alleged impairments, either physical or mental.  ALJ's Opinion at 11.  This absence of opinions favorable to Plaintiff's claim provides additional support for the ALJ's determination.

Finally, Plaintiff's routine activities provide evidence favoring the ALJ's RFC determination and his conclusion that Plaintiff is not disabled.  These routine activities consist of household chores like dusting, vacuuming, mopping, doing laundry, cooking, and washing dishes; taking care of Plaintiff's personal grooming and other self-care needs; mowing and weed-eating the lawn; driving; shopping; reading; watching television; using her computer; attending church and her son's ball games; and taking her son to the park on weekends.  *Id.*  Many of these activities, such as vacuuming, mopping, mowing and weed-eating the lawn, driving, and shopping would require Plaintiff to sit and/or stand for extended periods of time, which Plaintiff claims to be unable to do.  The ALJ summarized the above by stating that Plaintiff "presented to the hearing without evidence/presentation persuasive/consistent with her allegations."  *Id.*  Based on its own review of the record evidence, the Court cannot disagree with this assessment.

Upon careful examination of the administrative record, the Court holds that substantial evidence supports the ALJ's finding that Plaintiff has not been disabled since her alleged onset date of March 3, 2006 and that she retains the RFC to perform sedentary work subject to several restrictions.  To reiterate, substantial evidence is simply "such relevant evidence as a reasonable

19

mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 285-86.  Therefore, if substantial evidence supports the ALJ's conclusion, the Court is required to uphold it, even if a different conclusion could reasonably be drawn from the record evidence.  *Jones*, 336 F.3d at 475.  Since the ALJ's opinion applies the correct legal standards and is supported by substantial evidence, the Court must uphold it.  *See Warner*, 375 F.3d at 390.  No reversible error was committed here.

      **WHEREFORE**, the Court being sufficiently advised, and for the reasons stated above:

(1)      Plaintiff's Motion for Summary Judgment is **DENIED**; and

(2)      Defendant's Motion for Summary Judgement is **GRANTED**.

Dated this 4th day of August, 2008.

Signed By:

**_Karen K. Caldwell_**

**United States District Judge**